**IN THE UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| ORLANDO ALFRED, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff | **CLASS REPRESENTATION** |
| v. | JURY TRIAL DEMANDED |
| TRUSTEES OF DARTMOUTH COLLEGE dba DARTMOUTH COLLEGE, | |
| Defendant | |

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiff Orlando Alfred, individually and on behalf of all other similarly-situated persons, brings this action against the Trustees of Dartmouth College dba Dartmouth College.

**NATURE OF THE ACTION**

1.   This class action is brought on behalf of Mr. Alfred and other similarly-situated persons ("the Class"), who paid tuition and fees to Dartmouth College ("the College" or "Dartmouth"). Plaintiff and the Class (i) did not receive their bargained-for educational and other services and experiences, for which they paid; and (ii) have not been refunded a properly prorated portion of their tuition and fees after Dartmouth abruptly ceased providing such services to students during the spring of 2020 due to the spread of Coronavirus Disease 2019 ("COVID-19").

2.   As a result of Defendant's wrongful acts and unfair business practices alleged herein, Mr. Alfred and the Class have systematically been denied, and therefore seek: (i) a proper, prorated refund or reimbursement for the unused services for which they paid in the form of various university fees; and (ii) a proper, prorated refund or reimbursement for the decreased value of the education they received as a result of classes transitioning from in-person/on-campus instruction to an entirely remote, virtual learning format.

**PARTIES**

3.    Plaintiff Orlando Alfred is a citizen of the State of Florida. His son is an undergraduate studying at Dartmouth. Plaintiff paid for his son's tuition and fees, as described below.

4.    Defendant is a citizen of the State of New Hampshire. It owns and operates Dartmouth College and its principal place of business is located at 63 South Main Street, Suite 301, Hanover, New Hampshire, 03755, where it may be served with process.

5.    Dartmouth College is a private institution in Hanover, New Hampshire, attended by more than 6,000 students. Tuition and fees at Dartmouth cost approximately $60,000 per academic year.

**JURISDICTION AND VENUE**

6.    **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds the sum or value $5,000,000 excluding interest and costs, and this is a class action in which certain of the Class members, including the named representative, and Defendant are citizens of different states.

7.    **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because Defendant has continuous and systematic general business contacts in this State and District. Defendant's principal place of business is located within this District and it could be said to be "at home" in this District and Division.

8.    **Venue.** Venue is proper under 28 U.S.C. §1391(b)(1)-(2) because Defendant resides in this District and is a citizen of the State of New Hampshire and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

**FACTUAL ALLEGATIONS**

9.    Dartmouth is an accredited, private university in New Hampshire. Dartmouth enrolls approximately 4,000 undergraduates and 2,000 graduate/professional students across its four graduate schools, 40 undergraduate departments, and 50 research centers.

10.   Dartmouth offers certificate, associate, bachelor's, master's, and Ph.D. programs. It consistently is ranked among the nation's top universities. The US News & World Report ranked Dartmouth as the 12th best university among all national universities in 2020.

11.   Dartmouth rightly touts the quality and excellence of its on-campus undergraduate programs: "Widely recognized for the extraordinary quality of its undergraduate teaching, Dartmouth offers a liberal arts education for the 21st century: education in and beyond the classroom, plus the preparation to go out and change the world."[1]

12.   Dartmouth distinguishes itself based on programs involving "personal attention from top faculty, opportunities to participate in research, and a close-knit community."[2]

13.   Dartmouth does not merely sell credit hours and diplomas as one would sell widgets. It sells an experience—one enriched both personally and academically through hands-on experiential learning, social interaction, and involvement with faculty and with other students, as images from its website depict:





---

[1] Dartmouth, Admissions Office, https://home.dartmouth.edu/admissions-offices
[2] *Id.*

14.   Dartmouth charges fees and tuition for student education and for on-campus services and facilities.

15.   All students pay an array of fees including one or more of the following: class activity fees, document fees, student activity fees, and supplemental course fees.

16.   Defendant maintains records enabling it to identify and quantify by student all tuition and fees paid for the Spring and Summer 2020 terms.

17.   The specific tuition rate that a student pays varies not only by program, but also by whether the student enrolls in online or on-campus instruction. In 2020, for example, a student enrolling in an *online/on-campus hybrid* Master of Public Health program pays $38,181 in tuition per academic year; while that student's colleague in the *on-campus* Master of Public Health program pays $76,362 in tuition per academic year.

18.   Defendant maintains records enabling it to identify and quantify by student all tuition paid for the Spring and Summer 2020 terms at all Dartmouth College programs.

19.   Despite the availability of two online programs, one thing is clear—after 250 years of providing excellence in higher education, Dartmouth College has restricted or limited the number of online programs it offers. To date, Dartmouth only offers two online graduate programs (Master of Public Health and Master of Health Care Delivery Science), select blended and non-degree certificate programs, and no online undergraduate programs. Even the two online graduate programs are delivered as hybrid or low-residency programs that still require an on-campus component as the "residential components are integral to the online learning experience."[3]

20.   Dartmouth chooses to not provide a wide variety of online courses and instead requires undergraduate and graduate students to complete all or some portion of their

---

[3] Dartmouth, Online Learning, available at: https://dcal.dartmouth.edu/about/impact/online-learning

coursework on campus in order to fully deliver on its high-quality educational product.

21.   Dartmouth focuses heavily a student experience "anchored by campus life" where student "communities" are "designed to enhance students' academic and social experiences":





22.  Dartmouth boasts a high-tech, interactive campus featuring labs, research centers and institutes, and museums.

23.  Thousands of Dartmouth students were guaranteed such benefits and experiences when Plaintiff and Class members paid tuition to Dartmouth for on-campus courses. However, since mid-March 2020, these students have been denied the full benefits for which Plaintiff and Class members paid.

24.  In response to COVID-19, Dartmouth announced around March 12, 2020, its intention "to move Dartmouth to a remote format for the first five weeks of spring term (until May 1)."[4] Dartmouth later announced it would cancel in-person instruction and continue with the remote format through the remainder of the spring and summer terms.

25.  Despite suspending all in-person classes and labs since March 12, forcing students who signed up and paid for on-campus programs into less valuable online versions, and denying students access to facilities, resources, and services for which their fees and tuition paid, Dartmouth has not refunded any amount of tuition and has retained most fees paid by Plaintiff and the Class while increasing "miscellaneous" costs of attendance:[5]

*Below are Dartmouth's original Cost of Attendance and new Cost of Attendance for Spring 2020 due to COVID for Students Living at Home:*

| Original | Spring 2020 | COVID-19 | Spring 2020 |
|---|---|---|---|
| Tuition | 18,535 | Tuition | 18,535 |
| Room | 3,293 | Room | 1,083 |
| Board | 2,165 | Board | 1,550 |
| Books | 335 | Books | 335 |
| Fees | 533 | Fees | 339 |
| Miscellaneous | 680 | Miscellaneous | 860 |
| Total Costs | 25,541 | Total Costs | 22,702 |

---

[4] Dartmouth Office of the President, COVID-19 Important Spring Term Announcement: https://www.dartmouth.edu/president/announcements/2020-0312.html
[5] COVID Spring Term Cost Adjustments" https://financialaid.dartmouth.edu/covid-19-spring-term-cost-adjustments

26.   Although Dartmouth is eligible to receive nearly $3.5 million in taxpayer funding through the Coronavirus Aid, Relief, and Economic Security Act (CARES) Act, Defendant refuses to refund or reimburse Plaintiff and the Class the fees and tuition they paid for in-person education and services that no longer are being provided.

27.   Dartmouth offers both undergraduate and graduate programs, as well as certificates in everything from art history to physics. All undergraduate programs are offered only on campus; while a select few graduate programs and certificate programs are offered online or as an online-on campus hybrid: "Online teaching at Dartmouth reflects the college's learning philosophy. In our degree and small certificate programs, all of our courses are rigorous, intimate, and designed to foster a close relationship between students and the faculty."[6]

28.   Dartmouth's tuition is relatively high, a fact the College justifies for two reasons. First, Dartmouth offers "a different experience," one tied to the on-campus experience:

> Picture yourself. Dartmouth is a different experience. It's stepping into the role of researcher; bonding with your professor over coffee; exploring new intellectual frontiers; and thriving in a diverse community. If that sounds like you, then you belong here. We expect you to change the world—and we give you the tools to make it happen.[7]

29.   Second, Dartmouth justifies its high tuition because of the sense of community and enriching experiences offered to students as mentioned in the College's Mission Statement:

> The College provides a comprehensive out-of-classroom experience, including service opportunities, engagement in the arts, and competitive athletic, recreational, and outdoor programs. Pioneering programs in computation and international education are hallmarks of the College. Dartmouth graduates are marked by an understanding of the importance of teamwork, a capacity for leadership, and their keen enjoyment of a vibrant community. Their loyalty to Dartmouth and to each other is legendary and is a sustaining quality of the College.[8]

---

[6] Dartmouth Center or the Advancement of Learning, Online Learning: https://dcal.dartmouth.edu/about/impact/online-learning
[7] Dartmouth, The Undergraduate Experience: https://home.dartmouth.edu/education/undergraduate-experience
[8] Dartmouth, Mission Statement: https://home.dartmouth.edu/mission-statement

30.   Throughout its website, Dartmouth portrays students working in labs, studios, and interacting in lecture halls.

 



31.   Dartmouth is marketed as providing a holistic college experience for students to develop socially, interpersonally, intellectually and academically.

32.   For example, "Dartmouth fosters lasting bonds among faculty, staff, and students, which encourage a culture of integrity, self-reliance, and collegiality and instill a sense of responsibility for each other and for the broader world."[9]

33.   Throughout its website, Dartmouth reiterates the importance of residential life and hands-on experience, stating that working "side-by-side with faculty" is a "hallmark of the Dartmouth undergraduate education."

---

[9] Dartmouth, Mission Statement: https://home.dartmouth.edu/mission-statement



Students shop for dorm-room deals at the annual move-in sale. Residential life is central to the Dartmouth experience, with 90 percent of undergraduates living on campus.



Hands-on research, working side-by-side with faculty, is a hallmark of the Dartmouth undergraduate education.

34.   Of course, moving all courses exclusively online does not provide this level of interaction between students and faculty, access to experiences, opportunities, facilities, technology, and other resources. It is no doubt for this reason that, Dartmouth does not offer any online undergraduate programs.

35.   By paying such a high price for tuition, students at Dartmouth expect to get the entire Dartmouth experience. In addition to being able to take more hands-on, interactive coursework, they also can engage in research, career and internship opportunities, and study-abroad programs.

36.   The on-campus experience is not limited to academic opportunities. Dartmouth touts

the rich and robust social experience students can expect from an on-campus education.



37.  Students can participate in more 160 campus clubs and organizations, including the Dartmouth Outing Club, club sports, fraternity and sorority life, leadership development programs, professional organizations, and student government.

38.  Dartmouth students also have the opportunity to enjoy the natural beauty surrounding the Hanover campus, and the College lauds the rich experience campus life provides.



39.  In short, Dartmouth students pay for unique access to professional facilities and equipment, face-to-face classroom instruction; state-of-the-art labs; in-person networking events; guest lectures, and the opportunity for a rich social experience, among other things.

40.  Plaintiff paid $18,535.00 in tuition plus fees for his son to attend the 2020 Spring term. Fees included a health access fee of $94.00, a student activity fee of $100.00, and a general student services fee of $339.00. For the Summer term, Plaintiff paid $19,265.00 in tuition and a health access fee of $98.00, a student activity fee of $20.00, and a general student services fee of $352.00.

41.  Plaintiff covered his son's tuition and costs through a combination of federal grants, loans, and out-of-pocket payments.

42.  Plaintiff has not attended any in-person classes since mid-March, 2020. Instead, all his classes have been moved online.

43.  Although Plaintiff's son has been deprived of the in-person classes and an on-campus experience for which Plaintiff paid, he has not been offered and has not received any refund or reimbursement for the tuition or fees that he paid.

44.  By closing its campus in, Defendant has failed to deliver all of the educational services, facilities, technology, programming, activities, and other resources for which Plaintiff and Class members contracted when they made annual fee and tuition payments to the College.

45.  Plaintiff and the Class therefore are entitled to a prorated refund of tuition for the duration of Dartmouth's COVID-19-related closure for the services that Defendant has not provided, or which Defendant has provided in a severely diminished manner.

46.  The tuition that Plaintiff and Class members paid for on-campus programs was predicated on students' routine interaction with and feedback from peers, mentors, professors,

and guest lecturers; access to equipment, technology, facilities, and laboratories; and participation in extracurricular groups and learning, among other things—the services and opportunities that they are now being denied, while still being forced to pay for them.

47.   Not only has Dartmouth denied students access to these tangible services and benefits that are only available on-campus, it has forced students into online classes that are substandard and objectively less valuable than those for which Plaintiff and Class members paid.

48.   The online courses into which on-campus students have been forced were not *designed* to be administered online. In Dartmouth's preexisting and exclusively online programs, courses were developed specifically for online delivery.

49.   However, students who enrolled in and paid for on-campus programs—who chose and paid more for classroom instruction and in-person resources over online learning—have been forced into classes that were shoehorned into an online format at the last-minute. As a result, faculty have had to scramble mid-course to reinvent the wheel and, as a result, communication and learning have suffered significantly. In fact, some courses are not available remotely at all:

> Our faculty are working hard and getting creative to find ways to move as many courses to a remote format, however some are more difficult than others and not all may be available.[10]

50.   Dartmouth offers more than 40 undergraduate and graduate programs of study, each comprised of a core curriculum and dozens of major- and minor-specific study. The courses being offered during the Spring 2020 term had to be converted mid-semester, in a matter of days, to a virtual format for which they were not designed.

51.   Even if the transition to online delivery had been seamless, the fact remains—as evidenced by Dartmouth's decision to not offer traditional online undergraduate courses and to

---

[10] Questions from Student Assembly Regarding Spring Term 2020. *Responses: March 20, 2020.*

only offer limited online certificate and graduate programs—online courses are less valuable and less desirable to the Dartmouth community than the on-campus programs for which Plaintiff and Class members paid.

52.   Students were thrust into less valuable online courses on short notice and the sudden, mid-course shift to remote delivery has been disruptive and challenging.

53.   The end result is that Plaintiff and the Class have paid tuition for the full Dartmouth experience and yet they are receiving less. Rather than being provided the in-person instruction for which they paid, they have been thrown into haphazard virtual meetings with inadequate planning.

54.   At a minimum, then, Plaintiff and the Class should be reimbursed the difference between the tuition they paid for on-campus classes and the tuition paid for online courses. In reality, however, Plaintiff and Class members actually deserve an even larger refund, as the second-rate substitutes into which they have been forced are inferior to the online instruction that Dartmouth typically offers in its very limited online graduate and certificate programs.

55.   In paying their tuition, Plaintiff and Class members contracted and paid for high-quality, in-person instruction, as well as materials, lab fees, activity fees, and other associated costs. But, by abruptly closing down the school and forcing students into substandard, poorly planned, and poorly executed online courses, Dartmouth has not upheld its end of the bargain, and refuses to issue any prorated refunds to Plaintiff and the Class.

56.   Plaintiff and the Class have lost the benefits of the education, facilities, services, extra-curricular opportunities, and other experiences that Defendant promised. Despite failing to fulfill its obligations, Defendant is currently unlawfully retaining and refusing to fully or partially refund Plaintiff's tuition and costs.

57.   Plaintiff does not impugn Defendant for taking measures to protect the public health and that of its students and faculty; but Defendant must acknowledge that the education and services it now provides lack the full value of those for which Plaintiff and the

Class paid. Not only is a fully online college experience inferior, both socially and academically, to the in-person experience for which Plaintiff and the Class paid; but Dartmouth's ersatz online courses now offered to students are inferior to online courses that were conceived as such in the first instance.

58.   Essentially, Plaintiff and the Class have paid Defendant for access to buildings, labs, and facilities that students can no longer enter; equipment and technology they can no longer use; parking spaces they cannot access; and extra-curricular groups in which they can no longer participate, among other things.

59.   Thus, Plaintiff and Class have paid Defendant for a level of instruction, course content, and feedback, which, due to the abrupt and forced shift to online learning, are no longer being delivered. Defendant is profiting from COVID-19 by asking students and their families to bear the financial brunt of the pandemic. The result is a windfall to Defendant.

60.   Plaintiff and the Class have not realized and cannot realize the full value of the education, services, and other experiences that they were promised and for which they paid.

61.   Despite failing to fulfill its obligations to students, Dartmouth has retained Plaintiff's and the Class members' full tuition and fees.

62.   Defendant has failed to refund or reimburse Plaintiff and the Class the prorated portion of tuition and fees necessary to compensate them for the difference in value between what they paid for and what they received.

63.   Plaintiff and the Class, in paying tuition required by Defendant, reasonably expected education and services of a particular quality and value commensurate with the amount of tuition and fees each paid.

64.   However, Plaintiff and the Class have received—and will continue to receive during the 2020 Summer term—education and services of a different and substantially lesser value, i.e., one with a higher effective cost, than they reasonably expected.

65.  Accordingly, Plaintiff and the Class did not realize the benefit of the bargain and their expectations were not met.

66.  Plaintiff and the Class effectively paid more than the market value represented by bargained-for price of their tuition and costs. Plaintiff and the Class bargained with Defendant on a particular market value for the education and services they purchased. But because Defendant delivered only a portion of their reasonably expected value, Plaintiff and the Class paid a higher price than the fair market price to which they and Defendant had agreed, and received a level of education and services that was of lesser value than was represented to, and reasonably anticipated by, Plaintiff and the Class.

67.  For these reasons, the education and services delivered are worth less than Plaintiff and the Class paid for them.

68.  Plaintiff and the Class lost money by not receiving what they reasonably believed they were paying for while Defendant realized a commensurate unearned gain because it did not deliver to Plaintiff and the Class what it led them to believe they would receive.

69.  Plaintiff and the Class are entitled to disgorgement of those portions of their payments for unused services and are entitled to a prorated refund of their tuition for classes that are worth less than they paid.

70.  Defendant's refusal to refund any portion of tuition impacts all Class members and their losses are capable of calculation on a class-wide or a subclass basis.

71.  Defendant's refusal to refund any portion of fees and other costs impacts all Class members and their losses are capable of calculation on a class-wide or a subclass basis.

72.  Plaintiff paid tuition and fees for the 2020 Summer term because failure to attend the Summer term would have altered and undermined his planned course of study, including his tentative honors thesis, his ability to take a course required as a prerequisite for future courses and the 2020 Fall term, and consideration of contingencies that might have impacted his graduation date.

## CLASS ACTION ALLEGATIONS

73.   Pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), and (c)(4), Plaintiff brings this action for damages, equitable relief, and disgorgement on behalf of himself and the following Class:

> All persons who paid, on behalf of themselves or another, tuition or other costs to Dartmouth College for an in-person class or classes to be conducted during the 2020 Spring or Summer terms.

**Prerequisites: Numerosity—FRCP 23(a)(1).**

74.   The members the proposed Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.

75.   Although the precise number of Class members is unknown to Plaintiff, a good-faith investigation reveals that more than 6,000 students are enrolled at Dartmouth College. Even if these estimates vary considerably from actual enrollments, they support the contention that the Class is comprised of thousands of geographically dispersed members who cannot be practicably joined.

76.   The true size of the class is readily ascertainable through enrollment records maintained by Defendant and there is no question that joinder is impracticable.

**Prerequisites: Commonality—FRCP 23(a)(2).**

77.   This action involves questions of law and fact common to the Class, including:

   a.   the general, underlying course of conduct giving rise to the action; namely, Defendant's response to COVID-19 and its systemic policy decision not to reimburse or refund the Class as alleged herein;

   b.   whether Defendant accepted monies from the Class, and in what amounts;

   c.   whether Defendant retained money from the Class for services it did not render, or only partially rendered;

   d.   whether Defendant entered into contracts, express or implied, with the Class and, if so, the terms of such contracts;

e.  whether Defendant breached any such contracts with the Class through its systemic policy decisions regarding reimbursement;

f.  whether Defendant benefited from the monies accepted from the Class and, specifically, whether Defendant was unjustly enriched and/or whether Defendant converted property belonging to Class members or otherwise acted tortiously or inequitably based on its systemic policy decisions regarding reimbursement;

g.  whether the value of the educational and other services Defendant provided to the Class was commensurate the amount of money the Class paid for them;

h.  whether certification of the Class is appropriate; and

i.  whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief.

78.  These common issues will drive the resolution of the litigation in that their determination will resolve in one stroke issues that are central to the validity of each Class member's claims.

79.  **Predominance.** While there may be slight variations between Class members' claims—e.g., differences in the dollar amounts paid in tuition or fees—the factual and legal issues identified above (a) remain common to the Class, (b) arise from a common course of conduct and systemic policy decisions made by Defendant, (c) predominate in number and importance over questions that may not be common to the class, and (d) preclude neither class-wide calculation of damages nor the methodological determination of how such damages should be allocated among Class members.

**Prerequisites: Typicality—FRCP 23(a)(3).**

80.  Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members each paid for tuition and other routine fees associated with the 2020 Spring and/or Summer terms, but were not provided the full range or value of the services for which they paid.

81.  Each suffered damages in the form of lost tuition and other monies paid to

Defendant, the claims all arise from a single course of conduct by Defendant, and each Class member individually would make similar legal and factual arguments to establish Defendant's liability.

82.   There are no defenses available that are unique to the Plaintiff.

**Prerequisites: Adequacy of Representation—FRCP 23(a)(4).**

83.   Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class members.

84.   Plaintiff has retained counsel competent and experienced in complex litigation, including class actions, and he intends to prosecute this action vigorously on behalf of the Class.

85.   Plaintiff has no interests that are antagonistic to those of the Class and he will fairly and adequately protect the proposed Class members' rights, as will counsel.

**Superiority—FRCP23(b)(3).**

86.   A class action is a superior means to ensure the fair and efficient adjudication of this case.

87.   The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of the claims described herein against Defendant so that making the class whole in the absence of a class action is unlikely and impracticable.

88.   This also means class members have relatively less interest in individually controlling the prosecution of separate actions and it cannot be said that the interests of individuals pursuing individual cases in conducting separate lawsuits is so strong as to call for denial of a class action. Indeed, upon information and belief—based upon searches of PACER and news reports regarding university-related lawsuits—no other legal actions have been brought against Defendant concerning the subject matter of this action.

89.   Defendant has no facially plausible interest in defending against separate, geographically dispersed claims and, in fact, that would be more burdensome to Defendant than defending against all potential claims in a single forum and proceeding.

90.   Likewise, the judicial system has no interest in burdening many courts when the claims of this highly cohesive class can be fairly and efficiently concentrated and managed by this Court.

91.   Finally, individualized actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties involved and to the courts, including this Court. By proceeding as a class action, the claims at issue can be managed efficiently through economies of scale.

**Particular Issues—FRCP 23(c)(4).**

92.   Any or all of the issues identified in ¶ 77(a)-(i) are appropriate for certification pursuant to Fed. R. Civ. P. 23(c)(4) because each is particular and common to the Class and the resolution of each or all would materially advance the disposition of this action and the parties' interests.

93.   Certification of particular issues would move the litigation forward efficiently, saving money, time, and judicial resources for all involved, regardless of whether the action as a whole might be certified.

94.   For the reasons set forth above, these issues predominate in number and importance over questions that may not be common to the class.

**COUNT I**
**Breach of Contract**

95.   Plaintiff repeats, realleges and incorporates ¶ 1-94 as if fully alleged herein.

96.   Plaintiff brings this claim individually and on behalf of the Class.

97.   Plaintiff and the Class had the capacity to enter into and in fact entered into binding contracts with Defendant.

98.   Plaintiff and the Class members' contracts with Defendant provide that Plaintiff and the Class would pay tuition in exchange for on-campus educational, extracurricular, and social facilities and experiences.

99.   Specifically, Defendant offered and Plaintiff and the Class accepted—in exchange for paying their respective tuition amounts and other costs—on-campus educational and social facilities, services, and experiences for the 2020 Spring and Summer terms.

100. These contracts were formed by multiple documents when students bid by formally registering for courses offered by Defendant, in light of the quoted tuition pertaining to such registration, and Defendant thereafter accepted those bids, or registrations, by sending bills for tuition to Plaintiff and Class members, which were accepted and paid.

101.  As part of their contracts with Defendant, and, in exchange for adequate consideration that Plaintiff and the Class provided, Defendant promised to provide on-campus educational and social facilities, services, and experiences for the 2020 Spring and Summer terms to Plaintiff and the Class.

102.  Ever since closing its campus in mid-March 2020, Defendant has failed to provide the services that it was obligated to provide under its contracts with Plaintiff and the proposed Class. Defendant has retained tuition payments and fees paid by Plaintiff and the Class without providing them the full range or value of the promised benefits.

103.  By contrast, Plaintiff and the Class fulfilled their end of the bargain when they paid the monies due and owing for their full tuition and other costs, and they have otherwise satisfied all conditions precedent to the maintenance of this action.

104.  Defendant's breach of these contracts is material in each instance and has resulted in Plaintiff and members of the Class suffering losses and damages including, but not limited to, those of the sort described in ¶¶ 55-68.

105.  The tuition and other payments that Plaintiff and the Class paid were intended to cover in-person educational and extra-curricular services. Defendant, however, has improperly

retained the funds Plaintiff and the proposed Class paid without providing them the full range or value of the services and other benefits due under the contracts.

106.  Defendant's performance under the contracts is not excused because of COVID-19. Even if performance were excused or impossible, Defendant would nevertheless be required to return the funds received for services and/or goods that it did not provide.

107.  WHEREFORE, Plaintiff and the Class seek all damages and equitable relief to which they may be entitled, including refund of an amount of money not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class contracted and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

### COUNT II
### Contract Implied in Law (Restitution/Quasi-Contract)

108.  Plaintiff repeats, realleges and incorporates ¶ 1-94 as if fully alleged herein.

109.  Plaintiff brings this claim individually and on behalf of the Class.

110.  Plaintiff and the Class have conferred a benefit on Defendant in the form of tuition and other payments for the 2020 Spring and Summer terms.

111.  Defendant was aware of this benefit, voluntarily accepted it, and has retained this benefit, to which it is not entitled, at the expense of Plaintiff and the Class.

112.  For the reasons set forth in this complaint, the circumstances are such that it would be inequitable for Defendant to retain the full amount of the benefit conferred upon it by Plaintiff and the Class.

113.  Defendant has wrongfully retained a benefit conferred upon it by Plaintiff and the Class in an amount not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-

campus educational and social facilities, services, and experiences that Defendant delivered.

114.  WHEREFORE, Plaintiff and the Class seek disgorgement and refund of an amount of money not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

## COUNT III
## Unjust Enrichment

115.  Plaintiff repeats, realleges and incorporates ¶ 1-94 as if fully alleged herein.

116.  Plaintiff brings this claim individually and on behalf of the Class.

117.  This Count is alleged in the alternative to the claims set forth for legal relief.

118.  Plaintiff and the Class have conferred a benefit on Defendant in the form of tuition and other payments for the 2020 Spring and Summer terms.

119.  Defendant was aware of this benefit, voluntarily accepted it, and has retained and appreciated this benefit, to which it is not entitled, at the expense of Plaintiff and the Class.

120.  For the reasons set forth in this complaint, the circumstances are such that it would be inequitable for Defendant to retain the full amount of the benefit conferred upon it by Plaintiff and the Class.

121.  Defendant has wrongfully retained a benefit conferred upon it by Plaintiff and the Class in an amount not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

122.  WHEREFORE, Plaintiff and the Class seek disgorgement and refund of an amount of money not less than the amount that would be commensurate with the difference between

the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

## COUNT IV
## Conversion

123.  Plaintiff repeats, realleges and incorporates ¶ 1-94 as if fully alleged herein.

124.  Plaintiff brings this claim individually and on behalf of the Class.

125.  Defendant has wrongfully asserted dominion over the monies Plaintiff and the Class paid in the form of tuition and other fees and costs for on-campus educational and social facilities, services, and experiences for the 2020 Spring and Summer terms.

126.  Plaintiff and the Class maintained a property interest when such monies were paid over to Defendant and Defendant's retention of such monies without delivering a commensurate level of on-campus educational and social facilities, services, and experiences, as described in this complaint, renders Defendant's retention of and dominion over such monies inconsistent with Plaintiff and the Class members' interest in such monies, or the portion of those monies that would be commensurate with the value of the on-campus educational and social facilities, services, and experiences that Defendant failed to deliver or cannot deliver.

127.  Likewise, by paying such monies to Defendant, Plaintiff and the Class were vested with a right to a level of on-campus educational and social facilities, services, and experiences for the 2020 Spring and Summer terms commensurate with the amount of monies paid.

128.  Defendant's failure to provide the level of on-campus educational and social facilities, services, and experiences as described in this complaint, for which Plaintiff and the Class members paid, and Defendant's retention of all monies paid despite this failure on its part, interferes with the Plaintiff's and the Class members' right to and interest in a level of on-campus educational and social facilities, services, and experiences commensurate with the amount of monies paid.

129.  Defendant's interference with and dominion over Plaintiff's and the Class members' property and property interests, as described herein, entitles Plaintiff and the Class to damages equal to the full value of their property and property interests over which Defendant has wrongfully exercised dominion.

130.  WHEREFORE, Plaintiff and the Class seek disgorgement and refund of an amount of money not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

**PRAYER FOR RELIEF**

131.  Plaintiff, individually and on behalf of the Class, respectfully requests that the Court provide the following relief in their favor against Defendant:

a.  certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing the undersigned as Class Counsel;

b.  alternatively, certifying one or more issues identified herein pursuant to Fed. R. Civ. P. 23(c)(4), designating Plaintiff as Class representative, and appointing the undersigned as Class Counsel;

c.  declaring that Defendant is financially responsible for notifying the Class of the pendency of this suit;

d.  declaring that Defendant has wrongfully retained monies paid by the Class;

e.  awarding money damages and losses for breach of contract and on any other grounds permitted by law or equity;

f.  awarding injunctive relief, declaratory relief, restitution, and disgorgement as permitted by law or equity;

g.  awarding Plaintiff's reasonable attorney's fees, costs, and expenses;

h.  awarding pre- and post-judgment interest on any amounts awarded, to the extent permitted in law or equity; and

i.  awarding such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Individually and on behalf of the Class, Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted: May 28, 2020.

*s/Roger Phillips*
Roger Phillips (N.H. Bar No. 2018)
**PHILLIPS LAW OFFICE, PLLC**
roger@phillipslawoffice.com
104 Pleasant St.
Concord, NH 03301
Tel: (603) 225-2767
Fax: (603) 226-3581


*s/Matthew D. Schultz*
Matthew D. Schultz (PHV forthcoming)
**LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERTY & PROCTOR, P.A.**
mschultz@levinlaw.com
Rebecca K. Timmons (PHV forthcoming)
rtimmons@levinlaw.com
Brenton J. Goodman (PHV forthcoming)
bgoodman@levinlaw.com
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Tel: (850) 435-7140
Fax: (850) 436-6140


*s/ E. Michelle Drake*
E Michelle Drake (PHV forthcoming)
emdrake@bm.net
**BERGER MONTAGUE, PC**
43 SE Main St., Suite 505
Minneapolis, MN 55414
Tel: (612) 594-5900